This is a suit arising out of a collision between a motorcycle operated by plaintiff and a municipal bus, operated by the City of Alexandria and driven by one of its employees.
The plaintiff has sued for personal injuries of a serious nature which he received in the collision. He impleaded as defendant the liability insurer which had insured the City to the amount of $5,000 against loss by reason of such an accident. The same insurer was also the insurer of plaintiff's employer, under the Workmen's Compensation Act. It intervened, setting out that it had paid plaintiff compensation since the accident and claimed reimbursement for medical expenses incurred by it for him, for compensation paid and for a reasonable attorney's fee, under the provisions of Section 7 of the Compensation Act (No. 20 of 1914, as amended).
The collision occurred in the intersection of Lee Street with Masonic Drive, which connects with Lee from the west, and Fenner Street, which connects with Lee from the east. Lee Street runs north and south and is the route from Alexandria to Baton Rouge, or U.S. Highway 71. Masonic Drive is the route from Alexandria to Lake Charles, or U.S. Highway 165. Fenner Street is graveled and connects with Lee, but does not cross it. Neither does Masonic Drive cross Lee Street. It makes off from Lee in a southwesterly direction at an angle of approximately 40 degrees.
The entire intersection, as well as Lee Street and Masonic Drive, is paved. The west curb of Lee Street at the south end of the intersection curves in a westerly direction, in a more or less arc shape and continues southwest as the southerly curb of Masonic Drive. In this more or less arc or oval spot of ground at the southwest corner of the intersection is located a reservoir and pumping station owned by the City. However, it is set back far enough from the curb not to cause a blind curve at this place. From this pumping station there is a walk leading out to the curb and connects with it almost in the center of the arc connecting Lee Street with Masonic Drive. A black line had been painted on the pavement by the proper officials to direct traffic coming from Lee Street into *Page 104 
Masonic Drive and vice versa. This line begins at the center of Lee Street at the south end of the intersection and follows the arc around to the center of Masonic Drive and served the same purpose as the center black line on these two streets outside of the intersection. One entering Masonic Drive from Lee Street is required to drive to the right of the black line and the same thing applies to one entering Lee Street from Masonic Drive.
The morning of the accident, which occurred about 8 o'clock, the bus was on its regular run, which was north on Lee Street until he arrived at this intersection and then to turn left into Masonic Drive and continue on its route. The bus stopped at its regular stopping place approximately 60 feet south of Fenner Street and on the right or east curb of Lee Street where a passenger boarded it. It then started its turn toward Masonic Drive traveling just to the right of the black painted line, as it was supposed to do. When the front of the bus had reached the center of Lee Street, the driver saw approaching on Lee from the north a car which was traveling very fast. Not knowing whether this car was going to continue across the intersection and on south on Lee Street or turn to the right into Masonic Drive, the bus driver brought the bus almost to a stop. About that time the driver of the southbound car signalled that he was turning into Masonic Drive and the bus driver proceeded on his way. As the southbound car turned into Masonic Drive, there appeared plaintiff on his motorcycle traveling at a rate of speed between 35 and 50 miles per hour. Immediately upon seeing plaintiff, the bus driver brought the bus to a stop. The rear end of the bus was approximately three feet west of center line of Lee Street at that time. Due to the speed and imminence of danger, plaintiff partially lost control of the motorcycle, as was indicated by its wobbling. He attempted to go around the front end of the bus but ran into the left front of it after having missed the right front.
At the north junction of Masonic Drive with Lee Street a semaphore light hangs over the center of the street and constantly flashes a warning of danger and it was in operation at the time of the accident. The speed limit in this part of the City is fixed by ordinance, being 18 miles per hour.
The distance from the location of the accident to the point where plaintiff first emerged from behind the car which turned into Masonic Drive is approximately 60 feet. The distance from the front end of the bus to the curb adjacent to the walk was approximately 25 feet. The collision occurred in the street just in front of this walk and, accordingly, the front end of the bus was out of Lee Street and into Masonic Drive at that time. The front end was approximately 12 to 15 feet west of the projection of the west curb line of Lee Street.
Plaintiff had followed close behind the southbound car for some distance before arriving at the intersection. Both were exceeding the speed limit greatly. Plaintiff was so close behind this car that he could not see into the intersection and he could not be seen by the bus driver. Plaintiff did not reduce his speed before entering the intersection and paid no attention whatsoever to the warning of the semaphore light, although he was thoroughly familiar with the danger, due to the heavy traffic at this intersection. Plaintiff testified he did not see the bus until within a few feet of it. He could and should have seen it as soon as he emerged from behind the southbound car which was 60 feet or more from the bus. The law holds him to see that which he could and should have seen.
Plaintiff alleged that the damage done to him was caused solely by the carelessness and negligence of the bus driver and specifically set out the acts of negligence as follows:
"Did not keep a proper lookout and observe the direction of his travel;
"Did not observe what he should have seen, namely, the motorcycle of petitioner after it had negotiated the center of the intersections;
"Turned left from Lee Street into Masonic Drive without first ascertaining that the turn could be negotiated in safety and that all lanes of traffic on Lee Street and the Masonic Drive were clear, all in contravention of the traffic ordinances of the City of Alexandria, and the Highway Laws of Louisiana;
"Made a left turn from Lee Street into Masonic Drive without signalling his intention so to do, in contravention of the traffic ordinances of the City of Alexandria and the Highway Laws of Louisiana;
"`Cut the corner' of Lee Street and the Masonic Drive by turning from Lee Street *Page 105 
into Masonic Drive at a point south of the center of the intersection of said streets and of Lee Street and Fenner Street, all in contravention of the ordinances and State Laws. That under said traffic ordinances and State laws, it was the duty of the defendant in making said left turn to have proceeded on Lee Street beyond the center of the intersection of said streets before negotiating a left turn."
Defendant denied any negligence on the part of the bus driver and averred that the accident was caused solely by the gross negligence of plaintiff and, in the alternative, that the negligence of plaintiff was a proximate, contributing cause of the accident. The acts of negligence of which plaintiff was guilty, as alleged by defendant, are as follows:
"(a) He was operating his motorcycle in a reckless and careless manner, without due regard to his own safety;
"(b) He was operating his vehicle at the excessive and unlawful rate of speed of approximately 50 miles per hour, in violation of the traffic ordinance of the City of Alexandria, of the rules of the road, and of the traffic laws and regulations of the State of Louisiana, and especially in violation of ordinance 255 of the City of Alexandria, which limits the speed of vehicles on Lee Street to 18 miles per hour;
"(c) That he was not maintaining a proper lookout for traffic along the highway, and saw, or should have seen the bus turning into Masonic Drive in ample time to have stopped or slowed the speed of his motorcycle or turned to his right or left so as to avoid said collision;
"(d) He ignored and overran the electrically lighted caution signal then located over the intersection of Fenner and Lee Streets, and wrongfully and unlawfully entered said intersection at an excessive and reckless rate of speed, without looking ahead of him or without regard to his safety or the safety of others;
"(e) That there was ample room for him to have passed along Lee Street behind the said bus, or to have driven to his right on Masonic Drive in front thereof, and that he was therefore grossly negligent in not pursuing either way by which this accident could have been avoided;
"(f) That plaintiff's said motorcycle was not equipped with efficient brakes and said plaintiff made no attempt to apply his brakes or retard his speed until long after he saw or should have seen the bus turning into Masonic Drive;
"(g) That he was in no physical or mental condition to properly operate a motorcycle on the morning of this accident;
"(h) That while driving at an excessive and reckless rate of speed and without regard to the traffic light of said intersection or the traffic on said highway, he darted out from behind an automobile while he was following without regard to the condition of traffic on the said highway."
The lower court in a well written and lengthy opinion reviewed the evidence in the case and rejected plaintiff's demands. He is prosecuting this appeal.
We fail to find that the evidence discloses any acts of negligence on the part of the bus driver. That he did keep a proper lookout and observe the precaution of his travel is demonstrated by the fact that when he started his turn and on reaching the center of Lee Street he saw the car coming down Lee at a very fast rate of speed; that he immediately brought the bus to a near stop until he could see which direction the on-coming car intended to take. The bus was halfway across the street before the on-coming car arrived at the intersection. Clearly the bus had the right-of-way at that time and if the oncoming automobile ever had the right-of-way, it had lost it by reason of its excessive speed and failure to observe the danger warning signals of the semaphore light.
Since this southbound car had no superior right to the intersection than did the bus, it is certain that the plaintiff, who was hidden behind it and was violating the law in the manner he was operating the motorcycle, had no preference over the bus as to the right-of-way. To the contrary, the bus had the right-of-way at that time. That the bus driver stopped the bus on seeing the fast approaching car was a precaution which a careful driver might and should take to avoid an accident and possible injury to other persons.
It is our opinion from the testimony in the record that the bus driver used every precaution for the safety of his passengers and others that might be using the street in attempting to turn left into Masonic Drive. He made the turn where the traffic lines required him to make it. He at *Page 106 
no time exceeded five miles per hour and had the bus under complete control. If the plaintiff had not been speeding, had looked where he was going or had not entered the intersection as he did, emerging from his hiding place behind a car, all in violation of the law, there would have been no accident. We absolutely fail to find from the record where the bus driver failed to observe any law or where he was negligent in any respect. The sole cause of the accident was the negligence and reckless disregard of the traffic laws of the State and the City of Alexandria by the plaintiff.
In this court counsel for plaintiff admits that his client was guilty of negligence but insists that the bus driver was also negligent, and relies upon the doctrine of last clear chance for recovery. Under our finding, this doctrine has no application in this case. He argues here that if the bus driver had not stopped the bus, he would have cleared the path of plaintiff. At the rate of speed the two machines were traveling and the space of time intervening, which could not have exceeded one and one-half seconds from the time plaintiff came into view, until the impact, we are of the opinion that the driver acted as any reasonable man would have under the circumstances. He believed, as he testified, that if he had not stopped the bus, the motorcycle would have crashed into the side of it about midway. It was not the fault of the bus driver that this emergency had arisen and, if he was mistaken, which we doubt, he could not be held liable for the mistake. Furthermore, it is our opinion that if the last clear chance doctrine were applicable, plaintiff was the only one who could have avoided the accident. He had 60 feet or more within which to turn his motorcycle to the right and down Masonic Drive until such time as he could bring it to a stop. He also had more than one-half of Lee Street to the rear of the bus on which to pass, but he claims he did not see the bus until within a few feet of it. As we have stated before, he is held to have seen it in the eyes of the law when he was 60 feet away from it.
There is no error in the judgment of the lower court, and it is affirmed, with costs. *Page 234